IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

DAVID BRIAN SCANLAN,

    Plaintiff,                          No. CIV S-09-2808 LKK CKD P

    vs.

D.K. SISTO, et al.,                   ORDER AND

    Defendants.                 FINDINGS AND RECOMMENDATIONS

/

Plaintiff is a former state prisoner proceeding pro se and in forma pauperis with an action under 42 U.S.C. § 1983. He alleges that several correctional officers at California State Prison-Solano (CSP-Solano) violated his rights under the Eighth Amendment by failing to protect him from violence by other prisoners. The defendants who have been served in this matter – Flores, Fox, Picco, Sandy and Singh – have moved to dismiss under Rule 12(b)(6), arguing that plaintiff has failed to state a claim on which relief could be granted.[1]

////

---

[1] Because plaintiff is no longer imprisoned, defendants have requested that the application of Rule 230(l) be rescinded and Rule 230, which governs the briefing and hearing of motions, be applied to this case. Hearing no objection, the motion will be granted. However, the court exercises its discretion to decide the instant motion to dismiss on the record and briefs, without oral argument. See Local Rule 230(g).

1

I. Legal standard

When considering whether a complaint states a claim upon which relief can be granted, the court must accept the allegations as true, Erickson v. Pardus, 551 U.S. 89, 94 (2007), and construe the complaint in the light most favorable to the plaintiff. See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974). Pro se pleadings are held to a less stringent standard than those drafted by lawyers. See Haines v. Kerner, 404 U.S. 519, 520 (1972). Still, to survive dismissal for failure to state a claim, a pro se complaint must contain more than "naked assertions," "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555-557 (2007). In other words, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). Furthermore, a claim upon which the court can grant relief must have facial plausibility. Twombly, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949. Attachments to a complaint are considered to be part of the complaint for purposes of a motion to dismiss for failure to state a claim. Hal Roach Studios v. Richard Feiner & Co., 896 F.2d 1542, 1555 n.19 (9th Cir.1990).

II. Plaintiff's allegations

In June 2008, staff at CSP-Solano received information that tensions between white and black inmates at the prison's H-Dorm, where plaintiff resided, were high and that both groups were "ready to do battle." Complaint at 7 (Docket No. 1).[2] The complaint describes several precautionary steps prison staff took in anticipation of an outbreak of violence in other

---

[2] The court references the page numbers assigned by the court's CM/ECF system, where applicable. Also, the plaintiff's voluminous attachments to the complaint were by necessity divided by the court's electronic filing system into two separate sets of exhibits. See Docket No. 1. Therefore, the court refers to certain attachments as belonging to the "Complaint's Exhibits, Part I" or "Complaint's Exhibits, Part II," followed by the applicable page number.

2

parts of the prison, but it says that those precautions did not happen on H-Dorm. Id. The complaint goes on to allege that "in spite of previous policy of separating inmates in H-Dorm by race... no action was taken by the Administration and... they simply waited for the brawl to occur." Id. The complaint avers that "all of the [defendants], along with a handful of extra staff, were waiting outside the gymnasium for the riot to happen."[3] Id. Indeed a riot did occur on June 24, and plaintiff, a white inmate, was charged with participating in it and immediately placed in administrative segregation. Id. at 8. In his complaint, he claims that he "clearly had no choice but to fight to defend myself." Id. At the disciplinary hearing, however, he did not contest the charge. He pled guilty and stated at the hearing, "I'm guilty. I charged in there like a freaking knight and took off on the first nigger I saw." Complaint's Exhibits, Part I at 24-25.

       According to administrative documents that plaintiff has attached to his complaint, plaintiff was released from administrative segregation on September 24, 2008. See id. at 101. The complaint states that before his release into the general population, he "made appropriate staff aware of my safety concerns and personal fears and stated that I wanted a transfer anywhere else but back to Facility 2." Complaint at 8. Plaintiff claims he was ignored and was "released to Facility 2 where I was immediately attacked... beaten so badly that I nearly died." Id. He claims that other white inmates who had been involved in the June 24 riot were released into Facility 1, which was allegedly safer.[4] Id. at 9.

       The court screened the complaint as required under 28 U.S.C. § 1915A and found as follows: (1) plaintiff could proceed against defendants Sisto, Wong, Scavetta, Sandy, Picco, Singh, Fox and Flores for failure to protect plaintiff against the riot of June 24, 2008 (Claims I

---

[3] The complaint does not state what purpose the gymnasium served when the riot broke out. That is, it is not clear whether the gymnasium was being used for recreational purposes or whether, like at many prisons, it had been fashioned into additional sleeping quarters for a large number of inmates.

[4] Neither party explains the distinction, if any, between H-Dorm, where the riot occurred, and Facility 2, where the second fighting incident occurred.

3

1  and II of the complaint), and (2) plaintiff could proceed against Picco, Singh, Fox and Flores for
2  failure to protect against the attack of September 24, 2008 (Claim VI).  <u>See</u> Order at 2 (Docket
3  No. 13).

  III. <u>Defendants' motion to dismiss</u>

    "Prison officials have a duty... to protect prisoners from violence at the hands of other prisoners." <u>Farmer v. Brennan</u>, 511 U.S. 825, 833 (1994).  The failure of prison officials to protect inmates from attacks by other inmates may rise to level of an Eighth Amendment violation when: (1) the deprivation is "objectively, sufficiently serious" and (2) the prison officials had a sufficiently culpable state of mind, acting with deliberate indifference to a substantial risk of harm.  <u>Hearn v. Terhune</u>, 413 F.3d 1036, 1040 (9th Cir. 2005) (citing <u>Farmer</u>). "[D]eliberate indifference entails something more than mere negligence... [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." <u>Farmer</u>, 511 U.S. at 835.

    A. <u>Claims I and II: Failure to protect against the riot of June 24, 2008</u>

    The gravamen of plaintiff's allegations in Claims I and II is that on June 28, 2008, defendants stood passively outside the gymnasium on H-Dorm and "waited" for a race riot to happen.  If this were the complaint's sole factual representation of the defendants' response to the threat of a riot, the court, accepting the complaint's allegations as true at this stage, would find that defendants had not shown the claims should be dismissed under Rule 12(b)(6).

    However, as stated above, attachments to a complaint are also considered to be part of the complaint for purposes of a motion to dismiss for failure to state a claim.  <u>See</u> <u>Hal Roach Studios</u>, <u>supra</u>.  Defendants point to an incident report that plaintiff has included with the complaint's exhibits, a report that provides a detailed summary of the measures prison staff took in anticipation of a possible outbreak of violence on June 24, including the placement of additional staff on H-Dorm an hour and a half before the riot occurred.  <u>See</u> Complaint's Exhibits, Part I at 27.  The summary contradicts plaintiff's allegation that prison staff took

precautions against a riot in other parts of the prison but not on H-Dorm.  The summary also contradicts plaintiff's allegation that on June 24 the defendants were simply "waiting outside the gymnasium for the riot to happen."  Complaint at 7.  Instead, the report describes how and where the riot began:

> Prior to processing the white inmates back into H-Dorm, they were placed in a prone position on the handball court and yard outside of H-Dorm.  Once the additional staff were in place, the white inmates four at a time were given orders to get up [and] given [an] unclothed body search and ordered to enter H-Dorm with their shoes off.  At approximately 1745 hours, staff began processing white inmates back into H-Dorm when two of the four white inmates that entered H-Dorm ran and attacked a black inmate.  Several black inmates and the other two white inmates ran to the incident area and became involved in the incident.

Complaint's Exhibits, Part I at 27.

A claim upon which the court can grant relief must have facial plausibility.  Twombly, 550 U.S. at 570.  Plaintiff cannot plausibly recover on the allegation that the defendants' were simply "waiting" outside for a riot to start when it is established in the above exhibit that some prison staff were inside, actively engaged with the very prisoners who started it.  In his opposition, plaintiff does not attempt to explain or qualify the clear description of precautionary measures detailed in the incident report.   Plaintiff has thus submitted with his complaint a document that defeats any possibility that he could state a claim that defendants were deliberately indifferent to the threat of racial violence on June 24, 2008.  The motion to dismiss should be granted as to Claims I and II.

B.  Claim VI: Failure to protect against the assault of September 24, 2008

In Claim VI, plaintiff alleges that before he was released from administrative segregation on September 24, 2008, defendants Picco, Singh, Fox and Flores "all knew that I would be attacked by the black inmates on Facility 2, as I had been involved in the race riot there, and was the only white inmate involved being returned to that facility."  Complaint at 8.  The complaint states that all other white participants in the riot were released to Facility 1, which

presumably was safer for white inmates.  See id. at 9.  He alleges he "voic[ed] my personal safety concerns," but "[m]y concerns went unaddressed, and I was released to Facility 2 where I was immediately attacked and hit over the head with a cane, beaten so badly that I nearly died."  Id. at 8.

    Again the defendants argue that documents attached to the complaint defeat plaintiff's ability to state a claim for failure to protect against the assault of September 24.  They point to the written response to plaintiff's administrative appeal of the disciplinary charge he received for the fight, wherein the appeals officer wrote that plaintiff was asked on September 11, 2008, if he had any concerns about his release into the general population.  See Complaint's Exhibits, Part I at 102.  The appeals officer wrote that plaintiff "never stated you had any enemy concerns on either... [Facility 1 or 2]."  Id.  Defendants argue that the same document also shows that plaintiff instigated the assault.  The written response to the appeal, relying on the rules violation report filed after the incident, states that plaintiff "'rushed towards and physically attacked Black inmates who were seated at a dayroom table'"  Id. at 101.  The appeals officer wrote that "it is clearly documented that you and another inmate initiated this attack."  Id. at 102.  Defendants thus argue that (1) because plaintiff voiced no objection to his placement on Facility 2, they had no reason to anticipate he would be in danger there, and (2) because plaintiff instigated the assault, "[t]here is nothing the Defendants could have done to protect [him] from the [assault.] ... Defendants cannot be held liable for failing to protect an inmate from himself."  Motion at 8.

    Plaintiff has not pled himself out of Claim VI with his exhibits as he did in Claims I and II.  First, plaintiff has challenged the record of his September 11, 2008, interview, in which he supposedly voiced no concerns about his safety on Facility 2.  The copy of that document that plaintiff submitted as an exhibit contains his handwritten objection that "My concerns are omitted from this document!"  Complaint's Exhibits, Part II at 3 (Docket No. 1-1).  Indeed, his exhibits show he consistently claimed during the appeals process that prison staff knew or should

have known of the danger he would face if he went to Facility 2.

More importantly, even if plaintiff was silent about his safety concerns, that does not relieve defendants from their duty to protect him, a duty that includes not placing an inmate in a situation they know is likely to lead to violence. See Robinson v. Prunty, 249 F.3d 862, 866 (9th Cir. 2002); Berg v. Kincheloe, 794 F.2d 457, 460-61 (9th Cir. 1986). The facts alleged in the complaint and contained in the exhibits are consistent in painting a picture of an obvious potential for violence upon plaintiff's release from administrative segregation into Facility 2, facts the defendants knew or should have known regardless of what the plaintiff said when they asked him about his own safety concerns: plaintiff was a white inmate who had been an aggressor against black inmates in a riot three months earlier, and defendants released him into a facility that put him in close proximity to black inmates again. These facts, if true, create the reasonable inference that the defendants named in Claim VI were deliberately indifferent to plaintiff's safety when they placed him in Facility 2 with black inmates on September 24.

Defendants are also incorrect that the prison's disciplinary finding that plaintiff instigated the fight compels the court to dismiss the claim that defendants failed to protect him. First, plaintiff appears to have disputed from the beginning of his prison disciplinary process that he was the aggressor in the assault. See Complaint's Exhibits, Part II at 13-16. More significantly, though, even if it were undisputed that plaintiff started the fight, defendants are completely wrong in asserting that "Defendants cannot be held liable for failing to protect an inmate from himself." Motion at 8. To the contrary, there are circumstances, such as with suicidal inmates, in which it is well established that prison officials have a duty to take reasonable steps to protect prisoners from self-inflicted harm.[5] The duty to protect a prisoner

---

[5] Claims that a prison official failed to prevent a suicide fall under the Eighth Amendment's mandate that prisoners receive adequate mental health care. See Cotton v. Runnels, 2008 WL 478410 at *3 (E.D. Cal.). However, they are subject to the same legal standard of deliberate indifference as claims for failure to protect. See, e.g., Clouthier v. County of Contra Costa, 591 F.3d 1232, 1243-45 (9th Cir. 2010) (applying the deliberate indifference standard to a claim that a mental health specialist did not take steps to prevent a pre-trial

1  from his own actions may obtain even when the prisoner-plaintiff is the party who, it turns out,
2  threw the first punch in a fight.
3          In Santiago v. Walls, 599 F.3d 749 (7th Cir. 2010), the Seventh Circuit addressed
4  a failure to protect claim brought by a prisoner who was assigned to share a cell with a prisoner
5  who had a history of assaults on his cell mates.  The plaintiff in that case alleged that prison
6  officials knew about his new cell mate's history of violence before they assigned plaintiff to that
7  cell.  It was established that the plaintiff filed an emergency grievance requesting a cell transfer
8  to avoid a confrontation, but it was denied.  Id.  Four days later, an assault occurred.  Id.  At the
9  trial in district court, the plaintiff admitted that, although he was seriously injured in the fight, it
10 was he who threw the first punch "when the inevitable assault occurred."  Id. at 759.
11         On appeal, the Seventh Circuit's majority opinion refuted the dissent's insistence
12 that the prisoner's admission that he threw the first punch warranted dismissing his claim for
13 failure to protect.  The court explained:

> It is important to remember that his allegation in this case is an
> Eighth Amendment claim that the warden was deliberately
> indifferent by permitting his employees to create, and by
> continuing with his own inaction, a situation that inevitably would
> lead to confrontation and violence. ... Identity of the first to throw
> the first punch certainly does not negate the gravamen of Mr.
> Santiago's complaint that the warden was deliberately indifferent.
> It was the warden's job to ensure that no fight ever took place.

19 Id.  Here, the court makes no finding as to who, in fact, started the fight on Facility 2 on
20 September 24, but the reasoning in Santiago shows the identity of the aggressor is of no moment
21 under Rule 12(b)(6).  Plaintiff was a white inmate who bragged in a disciplinary hearing that he
22 "charged [into the riot] like a freaking knight and took off on the first nigger I saw."  Defendants
23 released him three months later into a facility where there was, apparently, no separation between
24 him and black inmates.  Even if plaintiff started the fight on September 24, that would not

---

detainee's suicide).

8

necessarily exonerate the defendants "when the inevitable assault occurred." Id.  As was the case in Santiago, "[i]t was the [defendants'] job to ensure that no fight occurred." Id.  Plaintiff has stated facts that, if proved, are sufficient to show defendants were deliberately indifferent to that duty.  Plaintiff has thus stated a claim for failure to protect against the assault of September 24, 2008, and the motion to dismiss that claim should be denied.

      IV.   Defendants' qualified immunity

Defendants claim they are entitled to qualified immunity.  They argue that even if plaintiff establishes a deprivation of his Constitutional rights, those rights were not clearly established law at the time of the alleged violations and, thus, plaintiff fails to state a claim under Federal Rule of Civil Procedure 8(a).  Defendants' qualified immunity argument is cognizable only insofar as they seek immunity from monetary damages in their individual capacities.  Los Angeles Police Protective League v. Gates, 995 F.2d 1469, 1472 (9th Cir. 1993).

Government officials performing discretionary functions generally are shielded from liability for civil damages when their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  In determining whether a governmental officer is immune from suit based on the doctrine of qualified immunity, the court considers two questions.  First, the court asks whether the facts alleged, taken in the light most favorable to the party asserting the injury, show the officer's conduct violated a constitutional right.  Saucier v. Katz, 533 U.S. 194, 201 (2001).  A negative answer ends the analysis, with qualified immunity protecting defendant from liability.  Id.  If a constitutional violation occurred, a court further inquires "whether the right was clearly established." Id.  "If the law did not put the [defendant] on notice that [his] conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate." Id. at 202.  The inquiry into whether a right was clearly established "must be taken in light of the specific context of the case, not as a broad general proposition." Id. at 201.  "[T]he right the official is alleged to have violated must have been 'clearly established' in a more particularized,

1  and hence more relevant, sense: The contours of the right must be sufficiently clear that a
2  reasonable official would understand that what he is doing violates that right." <u>Anderson v.</u>
3  <u>Creighton</u>, 483 U.S. 635, 640 (1987).
4        The district court may decide the order of addressing the two prongs of its
5  qualified immunity analysis in accordance with fairness and efficiency and in light of the
6  circumstances of a particular case.  <u>Pearson v. Callahan</u>, 555 U.S. 223 (2009).
7        The court need not address whether the defendants to Claims I and II have
8  qualified immunity because the court has found that those claims should be dismissed under Rule
9  12(b)(6).  However, the defendants to Claim VI do not have qualified immunity for their failure
10 to protect against the assault of September 24.  It has long been established that prison officials
11 may not be deliberately indifferent to a serious risk of harm to a prisoner, including a risk of an
12 outbreak of violence.  <u>See</u> <u>Farmer</u>, <u>supra</u>.  Again, regardless of the identity of the aggressor on
13 September 24, plaintiff has alleged that the defendants to Claim VI knowingly placed him in an
14 environment with a high potential for violence.  If true, that would be a violation of the Eighth
15 Amendment, as articulated in <u>Farmer</u>.  There is nothing so peculiar or particularized in plaintiff's
16 allegations that would remove Claim VI from the notice given by the Supreme Court in <u>Farmer</u>
17 and numerous other cases that placing an inmate in close proximity to other inmates who pose a
18 serious threat to his safety, and being deliberately indifferent to that risk, violates the
19 Constitution.  <u>See</u>, <u>e.g.</u>, <u>Robinson</u>, 249 F.3d at 866; <u>Berg</u>, 794 F.2d at 460-61.  The court should
20 reject defendants' argument for qualified immunity as to Claim VI.
21     V.   <u>Plaintiff's miscellaneous requests</u>
22       Plaintiff has filed a motion for a subpoena, apparently seeking documents that
23 relate to some of his allegations.  <u>See</u> Docket No. 50.  Plaintiff's motion is in the nature of a
24 discovery request and is therefore premature.  Discovery will commence when the court issues an
25 order setting the schedule and terms of discovery, as the court ordinarily does after the remaining
26 defendants file their answers.  Likewise, plaintiff's request to subpoena an inmate as a witness is

premature. The court will address the necessity of subpoenaing witnesses after the close of discovery and once it is certain that this case is ready for trial.

Finally, plaintiff includes a request that the defendants send all legal correspondence and filings in this case "to me [and] not my Regional Parole unit!" Motion at 2. The docket shows that defendants have properly served their filings on plaintiff at the address that plaintiff has provided the court. It is plaintiff's responsibility to provide the court with the address at which he wishes to receive the defendants' court filings and the court's orders.

VI.  Conclusion

For the reasons stated herein, the court finds that plaintiff has effectively pled himself out of Claims I and II. The exhibits to the complaint show that plaintiff cannot plausibly maintain a claim that defendants Sisto, Wong, Scavetta, Sandy, Picco, Singh, Fox and Flores were deliberately indifferent to a serious risk of harm when the riot of June 24, 2008, occurred.[6] Therefore those claims should be dismissed. However, plaintiff has stated a cause of action against defendants Picco, Singh, Fox and Flores for their alleged deliberate indifference to the risk of violence upon plaintiff's release into Facility 2 on September 24, 2008. Moreover, those defendants are not entitled to qualified immunity against that claim. The motion to dismiss as to Claim VI should be denied.

Accordingly, IT IS HEREBY ORDERED that:

1. Defendants' motion to apply Local Rule 230 (Docket No. 46) is granted. However, the court does not require oral argument as to the instant motion to dismiss.

\\\\\

---

[6] On September 28, 2011, the court ordered defendants to notify the court whether they were able to provide the current addresses of defendants Sisto, Scavetta and Wong, as plaintiff had been unable to serve them through their former places of employment. See Order (Docket No. 45). Defendants complied with the order on October 13, 2011. However, because dismissal of claims I and II would moot the necessity of serving Sisto, Scavetta and Wong with the complaint, the court will hold service on those defendants in abeyance until after the district judge assigned to this case adopts or vacates these findings and recommendations.

2.  Plaintiff's motion for the issuance of subpoenas (Docket No. 50) is denied without prejudice to renewal at the proper time.

IT IS RECOMMENDED that the motion to dismiss (Docket No. 19) be granted in part and denied in part. The motion should be granted on Claims I and II of the complaint. The motion should be denied as to Claim VI.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within fourteen days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: January 10, 2012

_____
CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

3
scan2808.57