1

2

3

4

5

6

7

8                          IN THE UNITED STATES DISTRICT COURT

9                        FOR THE EASTERN DISTRICT OF CALIFORNIA

10   DAVID BRIAN SCANLAN,

11            Plaintiff,                    No. CIV S-09-2808 LKK CKD P

12        vs.

13   D.K. SISTO, et al.,                    ORDER AND

14            Defendants.                   FINDINGS AND RECOMMENDATIONS

15   _____/

16            Plaintiff is a former state prisoner proceeding pro se and in forma pauperis with an

17   action under 42 U.S.C. § 1983.  He alleges that several correctional officers at California State

18   Prison-Solano (CSP-Solano) violated his rights under the Eighth Amendment by failing to

19   protect him from violence by other prisoners.  The defendants who have been served in this

20   matter – Flores, Fox, Picco, Sandy and Singh – have moved to dismiss under Rule 12(b)(6),

21   arguing that plaintiff has failed to state a claim on which relief could be granted.[1]

22   ////

23

24        [1] Because plaintiff is no longer imprisoned, defendants have requested that the application
     of Rule 230(l) be rescinded and Rule 230, which governs the briefing and hearing of motions, be
25   applied to this case.  Hearing no objection, the motion will be granted.  However, the court
     exercises its discretion to decide the instant motion to dismiss on the record and briefs, without
26   oral argument.  See Local Rule 230(g).

1   I.   Legal standard

2          When considering whether a complaint states a claim upon which relief can be

3   granted, the court must accept the allegations as true, Erickson v. Pardus, 551 U.S. 89, 94 (2007),

4   and construe the complaint in the light most favorable to the plaintiff.  See Scheuer v. Rhodes,

5   416 U.S. 232, 236 (1974).  Pro se pleadings are held to a less stringent standard than those

6   drafted by lawyers.  See Haines v. Kerner, 404 U.S. 519, 520 (1972).  Still, to survive dismissal

7   for failure to state a claim, a pro se complaint must contain more than "naked assertions," "labels

8   and conclusions" or "a formulaic recitation of the elements of a cause of action."  Bell Atlantic

9   Corp. v. Twombly, 550 U.S. 544, 555-557 (2007).  In other words, "[t]hreadbare recitals of the

10  elements of a cause of action, supported by mere conclusory statements do not suffice."  Ashcroft

11  v. Iqbal, 129 S. Ct. 1937, 1949 (2009).  Furthermore, a claim upon which the court can grant

12  relief must have facial plausibility.  Twombly, 550 U.S. at 570.  "A claim has facial plausibility

13  when the plaintiff pleads factual content that allows the court to draw the reasonable inference

14  that the defendant is liable for the misconduct alleged."  Iqbal, 129 S. Ct. at 1949.  Attachments

15  to a complaint are considered to be part of the complaint for purposes of a motion to dismiss for

16  failure to state a claim.  Hal Roach Studios v. Richard Feiner & Co., 896 F.2d 1542, 1555 n.19

17  (9th Cir.1990).

18  II.   Plaintiff's allegations

19         In June 2008, staff at CSP-Solano received information that tensions between

20  white and black inmates at the prison's H-Dorm, where plaintiff resided, were high and that both

21  groups were "ready to do battle."  Complaint at 7 (Docket No. 1).[2]  The complaint describes

22  several precautionary steps prison staff took in anticipation of an outbreak of violence in other

23

24         [2] The court references the page numbers assigned by the court's CM/ECF system, where
    applicable.  Also, the plaintiff's voluminous attachments to the complaint were by necessity
25  divided by the court's electronic filing system into two separate sets of exhibits.  See Docket No.
    1.  Therefore, the court refers to certain attachments as belonging to the "Complaint's Exhibits,
26  Part I" or "Complaint's Exhibits, Part II," followed by the applicable page number.

1   parts of the prison, but it says that those precautions did not happen on H-Dorm.  Id.  The

2   complaint goes on to allege that "in spite of previous policy of separating inmates in H-Dorm by

3   race... no action was taken by the Administration and... they simply waited for the brawl to

4   occur."  Id.  The complaint avers that "all of the [defendants], along with a handful of extra staff,

5   were waiting outside the gymnasium for the riot to happen."[3]  Id.  Indeed a riot did occur on June

6   24, and plaintiff, a white inmate, was charged with participating in it and immediately placed in

7   administrative segregation.  Id. at 8.  In his complaint, he claims that he "clearly had no choice

8   but to fight to defend myself."  Id.  At the disciplinary hearing, however, he did not contest the

9   charge.  He pled guilty and stated at the hearing, "I'm guilty.  I charged in there like a freaking

10  knight and took off on the first nigger I saw."  Complaint's Exhibits, Part I at 24-25.

11          According to administrative documents that plaintiff has attached to his

12  complaint, plaintiff was released from administrative segregation on September 24, 2008.  See

13  id. at 101.  The complaint states that before his release into the general population, he "made

14  appropriate staff aware of my safety concerns and personal fears and stated that I wanted a

15  transfer anywhere else but back to Facility 2."  Complaint at 8.  Plaintiff claims he was ignored

16  and was "released to Facility 2 where I was immediately attacked... beaten so badly that I nearly

17  died."  Id.  He claims that other white inmates who had been involved in the June 24 riot were

18  released into Facility 1, which was allegedly safer.[4]  Id. at 9.

19          The court screened the complaint as required under 28 U.S.C. § 1915A and found

20  as follows: (1) plaintiff could proceed against defendants Sisto, Wong, Scavetta, Sandy, Picco,

21  Singh, Fox and Flores for failure to protect plaintiff against the riot of June 24, 2008 (Claims I

22

23          [3] The complaint does not state what purpose the gymnasium served when the riot broke
24  out.  That is, it is not clear whether the gymnasium was being used for recreational purposes or
    whether, like at many prisons, it had been fashioned into additional sleeping quarters for a large
25  number of inmates.

26          [4] Neither party explains the distinction, if any, between H-Dorm, where the riot occurred,
    and Facility 2, where the second fighting incident occurred.

1   and II of the complaint), and (2) plaintiff could proceed against Picco, Singh, Fox and Flores for

2   failure to protect against the attack of September 24, 2008 (Claim VI).  See Order at 2 (Docket

3   No. 13).

4       III.   Defendants' motion to dismiss

5            "Prison officials have a duty... to protect prisoners from violence at the hands of

6   other prisoners."  Farmer v. Brennan, 511 U.S. 825, 833 (1994).  The failure of prison officials to

7   protect inmates from attacks by other inmates may rise to level of an Eighth Amendment

8   violation when: (1) the deprivation is "objectively, sufficiently serious" and (2) the prison

9   officials had a sufficiently culpable state of mind, acting with deliberate indifference to a

10  substantial risk of harm.  Hearn v. Terhune, 413 F.3d 1036, 1040 (9th Cir. 2005) (citing Farmer).

11  "[D]eliberate indifference entails something more than mere negligence... [but] is satisfied by

12  something less than acts or omissions for the very purpose of causing harm or with knowledge

13  that harm will result."  Farmer, 511 U.S. at 835.

14       A.   Claims I and II: Failure to protect against the riot of June 24, 2008

15            The gravamen of plaintiff's allegations in Claims I and II is that on June 28, 2008,

16  defendants stood passively outside the gymnasium on H-Dorm and "waited" for a race riot to

17  happen.  If this were the complaint's sole factual representation of the defendants' response to the

18  threat of a riot, the court, accepting the complaint's allegations as true at this stage, would find

19  that defendants had not shown the claims should be dismissed under Rule 12(b)(6).

20            However, as stated above, attachments to a complaint are also considered to be

21  part of the complaint for purposes of a motion to dismiss for failure to state a claim.  See Hal

22  Roach Studios, supra.  Defendants point to an incident report that plaintiff has included with the

23  complaint's exhibits, a report that provides a detailed summary of the measures prison staff took

24  in anticipation of a possible outbreak of violence on June 24, including the placement of

25  additional staff on H-Dorm an hour and a half before the riot occurred.  See Complaint's

26  Exhibits, Part I at 27.  The summary contradicts plaintiff's allegation that prison staff took

4

1   precautions against a riot in other parts of the prison but not on H-Dorm.  The summary also

2   contradicts plaintiff's allegation that on June 24 the defendants were simply "waiting outside the

3   gymnasium for the riot to happen."  Complaint at 7.  Instead, the report describes how and where

4   the riot began:

5   > Prior to processing the white inmates back into H-Dorm, they were
>   placed in a prone position on the handball court and yard outside of
6   > H-Dorm.  Once the additional staff were in place, the white
>   inmates four at a time were given orders to get up [and] given [an]
7   > unclothed body search and ordered to enter H-Dorm with their
>   shoes off.  At approximately 1745 hours, staff began processing
8   > white inmates back into H-Dorm when two of the four white
>   inmates that entered H-Dorm ran and attacked a black inmate.
9   > Several black inmates and the other two white inmates ran to the
>   incident area and became involved in the incident.

10

11  Complaint's Exhibits, Part I at 27.

12          A claim upon which the court can grant relief must have facial plausibility.

13  Twombly, 550 U.S. at 570.  Plaintiff cannot plausibly recover on the allegation that the

14  defendants' were simply "waiting" outside for a riot to start when it is established in the above

15  exhibit that some prison staff were inside, actively engaged with the very prisoners who started

16  it.  In his opposition, plaintiff does not attempt to explain or qualify the clear description of

17  precautionary measures detailed in the incident report.   Plaintiff has thus submitted with his

18  complaint a document that defeats any possibility that he could state a claim that defendants were

19  deliberately indifferent to the threat of racial violence on June 24, 2008.  The motion to dismiss

20  should be granted as to Claims I and II.

21          B.  Claim VI: Failure to protect against the assault of September 24, 2008

22          In Claim VI, plaintiff alleges that before he was released from administrative

23  segregation on September 24, 2008, defendants Picco, Singh, Fox and Flores "all knew that I

24  would be attacked by the black inmates on Facility 2, as I had been involved in the race riot there,

25  and was the only white inmate involved being returned to that facility."  Complaint at 8.  The

26  complaint states that all other white participants in the riot were released to Facility 1, which

1   presumably was safer for white inmates. <u>See id.</u> at 9.  He alleges he "voic[ed] my personal safety

2   concerns," but "[m]y concerns went unaddressed, and I was released to Facility 2 where I was

3   immediately attacked and hit over the head with a cane, beaten so badly that I nearly died." <u>Id.</u> at

4   8.

5           Again the defendants argue that documents attached to the complaint defeat

6   plaintiff's ability to state a claim for failure to protect against the assault of September 24.  They

7   point to the written response to plaintiff's administrative appeal of the disciplinary charge he

8   received for the fight, wherein the appeals officer wrote that plaintiff was asked on September

9   11, 2008, if he had any concerns about his release into the general population. <u>See</u> Complaint's

10  Exhibits, Part I at 102.  The appeals officer wrote that plaintiff "never stated you had any enemy

11  concerns on either... [Facility 1 or 2]." <u>Id.</u>  Defendants argue that the same document also shows

12  that plaintiff instigated the assault.  The written response to the appeal, relying on the rules

13  violation report filed after the incident, states that plaintiff "'rushed towards and physically

14  attacked Black inmates who were seated at a dayroom table'" <u>Id.</u> at 101.  The appeals officer

15  wrote that "it is clearly documented that you and another inmate initiated this attack." <u>Id.</u> at 102.

16  Defendants thus argue that (1) because plaintiff voiced no objection to his placement on Facility

17  2, they had no reason to anticipate he would be in danger there, and (2) because plaintiff

18  instigated the assault, "[t]here is nothing the Defendants could have done to protect [him] from

19  the [assault.] ... Defendants cannot be held liable for failing to protect an inmate from himself."

20  Motion at 8.

21          Plaintiff has not pled himself out of Claim VI with his exhibits as he did in Claims

22  I and II.  First, plaintiff has challenged the record of his September 11, 2008, interview, in which

23  he supposedly voiced no concerns about his safety on Facility 2.  The copy of that document that

24  plaintiff submitted as an exhibit contains his handwritten objection that "My concerns are

25  omitted from this document!" Complaint's Exhibits, Part II at 3 (Docket No. 1-1).  Indeed, his

26  exhibits show he consistently claimed during the appeals process that prison staff knew or should

1  have known of the danger he would face if he went to Facility 2.

2         More importantly, even if plaintiff was silent about his safety concerns, that does

3  not relieve defendants from their duty to protect him, a duty that includes not placing an inmate

4  in a situation they know is likely to lead to violence.  See Robinson v. Prunty, 249 F.3d 862, 866

5  (9th Cir. 2002); Berg v. Kincheloe, 794 F.2d 457, 460-61 (9th Cir. 1986).  The facts alleged in

6  the complaint and contained in the exhibits are consistent in painting a picture of an obvious

7  potential for violence upon plaintiff's release from administrative segregation into Facility 2,

8  facts the defendants knew or should have known regardless of what the plaintiff said when they

9  asked him about his own safety concerns: plaintiff was a white inmate who had been an

10  aggressor against black inmates in a riot three months earlier, and defendants released him into a

11  facility that put him in close proximity to black inmates again.  These facts, if true, create the

12  reasonable inference that the defendants named in Claim VI were deliberately indifferent to

13  plaintiff's safety when they placed him in Facility 2 with black inmates on September 24.

14         Defendants are also incorrect that the prison's disciplinary finding that plaintiff

15  instigated the fight compels the court to dismiss the claim that defendants failed to protect him.

16  First, plaintiff appears to have disputed from the beginning of his prison disciplinary process that

17  he was the aggressor in the assault.  See Complaint's Exhibits, Part II at 13-16.  More

18  significantly, though, even if it were undisputed that plaintiff started the fight, defendants are

19  completely wrong in asserting that "Defendants cannot be held liable for failing to protect an

20  inmate from himself."  Motion at 8.  To the contrary, there are circumstances, such as with

21  suicidal inmates, in which it is well established that prison officials have a duty to take

22  reasonable steps to protect prisoners from self-inflicted harm.[5]  The duty to protect a prisoner

23

24         [5] Claims that a prison official failed to prevent a suicide fall under the Eighth
Amendment's mandate that prisoners receive adequate mental health care.  See Cotton v.
25  Runnels, 2008 WL 478410 at *3 (E.D. Cal.).  However, they are subject to the same legal
standard of deliberate indifference as claims for failure to protect.  See, e.g., Clouthier v. County
26  of Contra Costa, 591 F.3d 1232, 1243-45 (9th Cir. 2010) (applying the deliberate indifference
standard to a claim that a mental health specialist did not take steps to prevent a pre-trial

1    from his own actions may obtain even when the prisoner-plaintiff is the party who, it turns out,

2    threw the first punch in a fight.

3              In Santiago v. Walls, 599 F.3d 749 (7th Cir. 2010), the Seventh Circuit addressed

4    a failure to protect claim brought by a prisoner who was assigned to share a cell with a prisoner

5    who had a history of assaults on his cell mates.  The plaintiff in that case alleged that prison

6    officials knew about his new cell mate's history of violence before they assigned plaintiff to that

7    cell.  It was established that the plaintiff filed an emergency grievance requesting a cell transfer

8    to avoid a confrontation, but it was denied.  Id.  Four days later, an assault occurred.  Id.  At the

9    trial in district court, the plaintiff admitted that, although he was seriously injured in the fight, it

10   was he who threw the first punch "when the inevitable assault occurred."  Id. at 759.

11             On appeal, the Seventh Circuit's majority opinion refuted the dissent's insistence

12   that the prisoner's admission that he threw the first punch warranted dismissing his claim for

13   failure to protect.  The court explained:

14

15             It is important to remember that his allegation in this case is an
               Eighth Amendment claim that the warden was deliberately
16             indifferent by permitting his employees to create, and by
               continuing with his own inaction, a situation that inevitably would
               lead to confrontation and violence. ... Identity of the first to throw
17             the first punch certainly does not negate the gravamen of Mr.
               Santiago's complaint that the warden was deliberately indifferent.
18             It was the warden's job to ensure that no fight ever took place.

19   Id.  Here, the court makes no finding as to who, in fact, started the fight on Facility 2 on

20   September 24, but the reasoning in Santiago shows the identity of the aggressor is of no moment

21   under Rule 12(b)(6).  Plaintiff was a white inmate who bragged in a disciplinary hearing that he

22   "charged [into the riot] like a freaking knight and took off on the first nigger I saw."  Defendants

23   released him three months later into a facility where there was, apparently, no separation between

24   him and black inmates.  Even if plaintiff started the fight on September 24, that would not

25   _____

26   detainee's suicide).

8

1   necessarily exonerate the defendants "when the inevitable assault occurred." Id. As was the case

2   in Santiago, "[i]t was the [defendants'] job to ensure that no fight occurred." Id. Plaintiff has

3   stated facts that, if proved, are sufficient to show defendants were deliberately indifferent to that

4   duty.  Plaintiff has thus stated a claim for failure to protect against the assault of September 24,

5   2008, and the motion to dismiss that claim should be denied.

6          IV.   Defendants' qualified immunity

7                Defendants claim they are entitled to qualified immunity.  They argue that even if

8   plaintiff establishes a deprivation of his Constitutional rights, those rights were not clearly

9   established law at the time of the alleged violations and, thus, plaintiff fails to state a claim under

10  Federal Rule of Civil Procedure 8(a).  Defendants' qualified immunity argument is cognizable

11  only insofar as they seek immunity from monetary damages in their individual capacities.  Los

12  Angeles Police Protective League v. Gates, 995 F.2d 1469, 1472 (9th Cir. 1993).

13               Government officials performing discretionary functions generally are shielded

14  from liability for civil damages when their conduct does not violate clearly established statutory

15  or constitutional rights of which a reasonable person would have known.  Harlow v. Fitzgerald,

16  457 U.S. 800, 818 (1982).  In determining whether a governmental officer is immune from suit

17  based on the doctrine of qualified immunity, the court considers two questions.  First, the court

18  asks whether the facts alleged, taken in the light most favorable to the party asserting the injury,

19  show the officer's conduct violated a constitutional right.  Saucier v. Katz, 533 U.S. 194, 201

20  (2001).  A negative answer ends the analysis, with qualified immunity protecting defendant from

21  liability.  Id.  If a constitutional violation occurred, a court further inquires "whether the right was

22  clearly established."  Id.  "If the law did not put the [defendant] on notice that [his] conduct

23  would be clearly unlawful, summary judgment based on qualified immunity is appropriate."  Id.

24  at 202.  The inquiry into whether a right was clearly established "must be taken in light of the

25  specific context of the case, not as a broad general proposition."  Id. at 201.  "[T]he right the

26  official is alleged to have violated must have been 'clearly established' in a more particularized,

1  and hence more relevant, sense: The contours of the right must be sufficiently clear that a

2  reasonable official would understand that what he is doing violates that right." <u>Anderson v.</u>

3  <u>Creighton</u>, 483 U.S. 635, 640 (1987).

4          The district court may decide the order of addressing the two prongs of its

5  qualified immunity analysis in accordance with fairness and efficiency and in light of the

6  circumstances of a particular case.  <u>Pearson v. Callahan</u>, 555 U.S. 223 (2009).

7          The court need not address whether the defendants to Claims I and II have

8  qualified immunity because the court has found that those claims should be dismissed under Rule

9  12(b)(6).  However, the defendants to Claim VI do not have qualified immunity for their failure

10 to protect against the assault of September 24.  It has long been established that prison officials

11 may not be deliberately indifferent to a serious risk of harm to a prisoner, including a risk of an

12 outbreak of violence.  <u>See</u> <u>Farmer</u>, <u>supra</u>.  Again, regardless of the identity of the aggressor on

13 September 24, plaintiff has alleged that the defendants to Claim VI knowingly placed him in an

14 environment with a high potential for violence.  If true, that would be a violation of the Eighth

15 Amendment, as articulated in <u>Farmer</u>.  There is nothing so peculiar or particularized in plaintiff's

16 allegations that would remove Claim VI from the notice given by the Supreme Court in <u>Farmer</u>

17 and numerous other cases that placing an inmate in close proximity to other inmates who pose a

18 serious threat to his safety, and being deliberately indifferent to that risk, violates the

19 Constitution.  <u>See</u>, <u>e.g.</u>, <u>Robinson</u>, 249 F.3d at 866; <u>Berg</u>, 794 F.2d at 460-61.  The court should

20 reject defendants' argument for qualified immunity as to Claim VI.

21          V.    <u>Plaintiff's miscellaneous requests</u>

22          Plaintiff has filed a motion for a subpoena, apparently seeking documents that

23 relate to some of his allegations.  <u>See</u> Docket No. 50.  Plaintiff's motion is in the nature of a

24 discovery request and is therefore premature.  Discovery will commence when the court issues an

25 order setting the schedule and terms of discovery, as the court ordinarily does after the remaining

26 defendants file their answers.  Likewise, plaintiff's request to subpoena an inmate as a witness is

1 premature.  The court will address the necessity of subpoenaing witnesses after the close of

2 discovery and once it is certain that this case is ready for trial.

3        Finally, plaintiff includes a request that the defendants send all legal

4 correspondence and filings in this case "to me [and] not my Regional Parole unit!"  Motion at 2.

5 The docket shows that defendants have properly served their filings on plaintiff at the address

6 that plaintiff has provided the court.  It is plaintiff's responsibility to provide the court with the

7 address at which he wishes to receive the defendants' court filings and the court's orders.

8     VI.   <u>Conclusion</u>

9        For the reasons stated herein, the court finds that plaintiff has effectively pled

10 himself out of Claims I and II.  The exhibits to the complaint show that plaintiff cannot plausibly

11 maintain a claim that defendants Sisto, Wong, Scavetta, Sandy, Picco, Singh, Fox and Flores

12 were deliberately indifferent to a serious risk of harm when the riot of June 24, 2008, occurred.[6]

13 Therefore those claims should be dismissed.  However, plaintiff has stated a cause of action

14 against defendants Picco, Singh, Fox and Flores for their alleged deliberate indifference to the

15 risk of violence upon plaintiff's release into Facility 2 on September 24, 2008.  Moreover, those

16 defendants are not entitled to qualified immunity against that claim.  The motion to dismiss as to

17 Claim VI should be denied.

18        Accordingly, IT IS HEREBY ORDERED that:

19        1.  Defendants' motion to apply Local Rule 230 (Docket No. 46) is granted.

20 However, the court does not require oral argument as to the instant motion to dismiss.

21 \\\\\

22

---

23     [6] On September 28, 2011, the court ordered defendants to notify the court whether they
were able to provide the current addresses of defendants Sisto, Scavetta and Wong, as plaintiff

24 had been unable to serve them through their former places of employment.  <u>See</u> Order (Docket
No. 45).  Defendants complied with the order on October 13, 2011.  However, because dismissal

25 of claims I and II would moot the necessity of serving Sisto, Scavetta and Wong with the
complaint, the court will hold service on those defendants in abeyance until after the district

26 judge assigned to this case adopts or vacates these findings and recommendations.

1         2.  Plaintiff's motion for the issuance of subpoenas (Docket No. 50) is denied

2    without prejudice to renewal at the proper time.

3         IT IS RECOMMENDED that the motion to dismiss (Docket No. 19) be granted in

4    part and denied in part.  The motion should be granted on Claims I and II of the complaint.  The

5    motion should be denied as to Claim VI.

6         These findings and recommendations are submitted to the United States District

7    Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-

8    one days after being served with these findings and recommendations, any party may file written

9    objections with the court and serve a copy on all parties.  Such a document should be captioned

10   "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

11   shall be served and filed within fourteen days after service of the objections.  The parties are

12   advised that failure to file objections within the specified time may waive the right to appeal the

13   District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

14     Dated: January 10, 2012

15

16                             CAROLYN K. DELANEY
                          UNITED STATES MAGISTRATE JUDGE

17

18

19

20   3
   scan2808.57

21

22

23

24

25

26